UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH O. OWENS, JR.,<br><br>Petitioner,<br><br>v.<br><br>DERRICK CARRAWAY, Regional Parole Administrator,[1]<br><br>Respondent. | No. 2:15-cv-1286 DJC AC P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action proceeds on the second amended petition, ECF No. 29, which challenges petitioner's 2011 conviction for murder, robbery, and burglary. Respondent has answered. ECF No. 48. Petitioner did not file a traverse.

BACKGROUND

I.  Proceedings in the Trial Court

A.  Preliminary Proceedings

Petitioner and three co-defendants—Maurice Reed, Dejon Murray, and Tamika Reed— were charged in Sacramento County with first degree felony murder with special circumstances

---

[1] Petitioner has been released to parole during the pendency of this case. See ECF No. 42. Accordingly, the Clerk of Court will be directed to substitute the Regional Parole Administrator as the proper respondent. See ECF No. 48 at 2, n.1.

1

and related charges. Tamika Reed entered into a plea bargain in which she received a sentence of three years and eight months for accessory and grand theft, and agreed to testify against the three men. Petitioner, Maurice Reed, and Dejon Murray were tried by separate juries in a consolidated proceeding.

### B. The Evidence Presented at Trial[2]

#### 1. Prosecution Case

##### a. Victims of Robbery and Burglary

Roommates Derek Martin and Eric Warren were having dinner at their apartment on Friday, March 26, 2010, when there was a knock at their door. Warren thought it was their friend, Salvador Heredia-Arriaga, who was going to take Warren out to a bar. Instead, two armed men intruded.

The first man was Maurice Reed, who, about one week before, had come to the apartment to buy marijuana from Warren. Reed carried a revolver. The second man was Dejon Murray, carrying a semiautomatic handgun. About two days before, Murray had come to the apartment with petitioner to buy marijuana. Petitioner had previously lived at the same apartment complex, and he had on several occasions socialized with and bought marijuana from Warren.

Reed and Murray barked orders and death threats at Martin and Warren, gathered up marijuana, cash, wallets, and video games and equipment, herded Martin and Warren to the bathroom, and then demanded four minutes for an escape. While in the bathroom, Warren heard the front door open. Realizing it was Heredia-Arriaga, Warren yelled, "Sal, give it up. We are being robbed." Warren and Martin heard scuffling, and then one gunshot. Emerging from the bathroom, Warren and Martin discovered a fallen Heredia-Arriaga, who died of a gunshot wound to the chest.

##### b. Witness Desirea Cunningham

Desirea Cunningham, petitioner's girlfriend and the mother of their child, told police that she heard petitioner call his cousin, Reed, on the night of the homicide. Petitioner told Reed that

---

[2] The following factual summary is largely adapted from the opinion of the California Court of Appeal, ECF No. 47-12 at 3-6.

he had a "lick" (a robbery), mentioning that a person who lived at petitioner's former apartment complex had money, a plasma TV, and an Xbox. Petitioner told Reed to meet him "somewhere" near the apartments.

At trial, Cunningham acknowledged having made these statements, but said they were lies prompted by her anger over "another woman."

### c. Accomplice/Accessory Tamika Reed

Tamika Reed (Tamika) was Maurice Reed's sister, petitioner's cousin, and the girlfriend of a good friend of Dejon Murray's. As noted above, she was charged with special circumstance murder but received a favorable plea bargain in exchange for testifying against these three.

On the night of the shooting, Tamika was at a party for her boyfriend, which defendants Reed and Murray also attended, when Reed asked Tamika to drive him to get some marijuana. As the two Reeds were heading out, defendant Reed had Tamika pick up Murray, who had just obtained from another man something wrapped in a white shirt.

Tamika and her crew subsequently engaged with petitioner and followed his car to an apartment complex. There, they all parked. Petitioner told defendants Reed and Murray to knock on a certain door and provide some sort of word or code. Petitioner stayed behind, talking to Tamika, and then walked off.

A short time later, petitioner returned, walking rapidly to his car and driving off hurriedly. Maurice Reed followed hastily in short order, jumping in Tamika's car and saying, "Go, go, go." On the way out, they stopped for Murray, who flopped in the backseat armed with a gun in one hand and a PlayStation in the other.

Tamika's trio drove to her apartment, where petitioner joined them about five or 10 minutes later. At Tamika's apartment, Reed gave a "cowboy" (revolver) gun to Murray, which was unlike the gun Tamika had seen Murray with during their getaway. The three men argued and lamented why Murray had shot the man, with Murray responding, "He was wrestling with you [(i.e., Reed)]. What was I supposed to do . . . ?" Then, they divided the loot.

////

////

      d.    <u>Physical Evidence</u>

Found at the scene of the shooting were an ejected (fired) .40-caliber semiautomatic bullet casing, a fired bullet embedded in a wall, and an unfired .40-caliber bullet.

A criminalist opined that a fingerprint taken from a videogame case at the scene matched Murray's.

When Murray was arrested about four weeks after the shooting, he was carrying a loaded .44-caliber revolver (which would not eject bullet casings like the .40-caliber semiautomatic casing found at the scene). Incriminating text messages were found on Murray's cell phone.

      e.    <u>Maurice Reed's Admissions</u>

In a jail interview with a local television reporter, Reed stated that he went to the Martin-Warren apartment to rob the men, not to kill them; he also wrote a letter of apology to the Heredia-Arriaga family.

    2.    <u>Defense Case</u>

Petitioner did not call any witnesses.

Co-defendant Dejon Murray presented two witnesses, who testified in the presence of petitioner's jury: a clinical psychologist who testified to Murray's impaired intellectual functioning, and Murray's aunt, Channa Gates, who testified that Tamika had said petitioner and Maurice Reed had gotten Murray "all liquored up and all drugged up" and took him to the robbery. Tamika had said that Murray was not the shooter, and that petitioner had set up the robbery. Petitioner's counsel cross-examined the latter witness.

C. <u>Outcome</u>

Petitioner was found guilty of first degree felony murder with special circumstances (murder committed in the course of a robbery and a burglary), two counts of robbery in concert, and one count of burglary. The jury found true an allegation that petitioner was vicariously armed.

Petitioner was sentenced to life without parole, plus a term of years.

////

////

II.     Post-Conviction Proceedings

Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of conviction on September 24, 2013. ECF No. 47-12. The California Supreme Court denied review on January 16, 2014. ECF No. 47-14.

Petitioner's state habeas filings have been numerous.[3] Here the court notes only those collateral proceedings which bear on the posture of the federal claims.

Prior to the commencement of this federal habeas action in June 2015, petitioner filed two habeas petitions in the Sacramento County Superior Court. ECF Nos. 48-15, 48-19. Both were denied before the initial federal petition was filed, ECF Nos. 48-16, 48-20, but petitioner had not yet sought relief in the higher state courts. The initial federal petition was accordingly accompanied by a motion for stay and abeyance pending exhaustion of state court remedies. ECF No. 2. That motion was eventually granted. ECF No. 20. Petitioner filed a second amended federal petition on March 22, 2019. By order filed on September 28, 2021, the assigned district judge found that the claims of the second amended petition had been fairly presented to the California Supreme Court in Case Nos. 5234384 and 5232389.[4] ECF No. 39. Accordingly, it was ordered that this case proceed on the basis of the second amended complaint. Id. Respondent was ordered to answer, and the answer was filed on February 21, 2024.

In addition to exhausting his federal claims, during the pendency of this case petitioner sought relief in state court on state law grounds. Beginning in 2020, after the California Supreme Court's ruling in In re Scroggins, 9 Cal. 5th 667 (2020), petitioner collaterally challenged the jury's special circumstance finding under People v. Banks, 61 Cal. 4th 788 (2015) and People v. Clark, 63 Cal. 4th 522 (2016). Banks and Clark had narrowed application of the felony murder special circumstance in the accomplice liability context. Scroggins then held that defendants could challenge the sufficiency of the evidence of pre-Banks and Clark special circumstance findings by means of habeas petitions. The California Court of Appeal granted habeas relief to

---

[3] See ECF No. 47 (lodged state court record); ECF No. 48 (Answer) at 3-4 (chronology of state habeas filings).

[4] See ECF Nos. 47-35, 47-37.

petitioner on August 22, 2022.  ECF No. 47-38.  The court found that substantial evidence did not support a conclusion that petitioner acted with reckless indifference to human life, which is necessary for the felony-murder special circumstance to apply to an accomplice who is not the actual killer.  Id. at 10, 16-17.  The Court of Appeal therefore vacated the special circumstance, id., and petitioner was resentenced accordingly.  Petitioner was released to parole in July 2023.  ECF No. 42 (notice of change of address).

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99 (2011).  State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)).  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 102.

DISCUSSION

I.   Claim One: Actual Innocence

    A. Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that he is actually innocent of committing the charged crimes, and argues that in light of the evidence presented at trial and his newly presented evidence no reasonable juror could find him guilty beyond a reasonable doubt. ECF No. 29 at 4. He attacks the veracity and reliability of the witnesses against him and the strength of inferences to be drawn from the evidence. Id. at 7-8. The exhibits referenced in this claim include excerpts of the

Clerk's Transcript documenting that phone records with which petitioner was confronted during a videotaped interview with police had not been entered into evidence, id. at 17-19; various excerpts of the trial transcript highlighting problems with witness credibility and alleged failures of proof, id. at 21-39, 45-57, 65-77; a handwritten statement from a person who reports that Desirea Cunningham had been upset about petitioner's infidelity and motivated to get revenge, id. at 40-42; and a police report of a witness interview, id. at 59-63.

Petitioner filed a supplement which seeks to add an additional exhibit in support of this claim. ECF No. 38.[5] This exhibit is a portion of a transcribed jailhouse phone call between petitioner and Ms. Cunningham. Id. at 3-8. In the conversation, Cunningham appears to acknowledge unspecified lies that she told because she was angry with petitioner. The transcript bears a document header that reads "RE: PEOPLE V MURRAY, REED, REED, OWENS CASE: 10F02610." Id.

### B. The Clearly Established Federal Law

There is no "clearly established federal law" that recognizes a substantive constitutional right not to be criminally convicted if innocent. See Herrera v. Collins, 506 U.S. 390, 404 (1993); Dist. Attorney's Office v. Osborne, 557 U.S. 52, 71-72 (2009) (recognizing that the Supreme Court has not decided the issue). In procedural contexts where "actual innocence" may be relevant to federal habeas proceedings, the standard is high: a petitioner must present reliable new evidence, in light of which no reasonable jury would have convicted him. See Schlup v. Delo, 513 U.S. 298 (1995) (actual innocence as exception to procedural default), McQuiggin v. Perkins, 569 U.S. 383 (2013) (actual innocence as basis for equitable tolling of statute of limitations).

### C. The State Court's Ruling

The California Supreme Court denied relief without comment or citation. ECF Nos. 26, 40. This court therefore "looks through" the silent denial to the last reasoned state court decision. See Ylst v. Nunnemaker, 501 U.S. 797 (1991). Because the superior court issued the only

---

[5] The previously assigned district judge specifically referred the request to supplement to the undersigned. ECF No. 39. Petitioner's request is hereby granted to the extent that the transcript at ECF No. 38 is considered as part of the proffered factual basis for Claims One and Three.

reasoned decision adjudicating this claim,[6] that is the decision reviewed for reasonableness under § 2254(d). See Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005).

The superior court ruled in pertinent part as follows:

> To state a prima facie case, a habeas petition must state, with particularity, the facts upon which the petitioner is relying to justify relief, and be supported by reasonably available documentary evidence; vague conclusory allegations are insufficient to warrant a writ. (*In re Swain* (1949) 34 Cal.2d 300, 3030-304; *People v. Duvall* (1995) 9 Cal.4th 464, 474; *In re Harris* (1993) 5 Cal.4th 813, 827 fn.5.) In order to be a cognizable habeas corpus claim, newly discovered evidence must undermine the entire prosecution case and point unerringly to innocence or reduced culpability. (*In re Clark* (1993) 5 Cal.4th 750, 766.) It is not sufficient if the evidence might have weakened the prosecution's case or presented a more difficult question for the trier of fact.
>
> In this case, Petitioner has presented evidence that is neither new nor points unerringly to his innocence. Instead, Petitioner's claim is based on excerpts of trial and preliminary hearing testimony that he interprets as showing that the prosecution's witnesses presented biased, inconsistent, and unreliable testimony. Petitioner also attaches a declaration made by Josephine Porter in which she claims that the Petitioner's girlfriend Desirea Cunningham, who told police that on the night of the murder she heard Petitioner talking about a robbery and the target, told her that the Petitioner was cheating on her, and that it is her belief that she wanted revenge on him for the affair. She also claims that Ms. Cunningham told her that the police pressured her and she switched her story. The declaration is inadmissible hearsay and speculation. Even if it was admissible, this is not new evidence. As shown in Exhibits 2 and 11 attached to the petition, both the prosecutor and Petitioner's attorney questioned Ms. Cunningham on this point, including her anger toward Petitioner over the affair and whether she gave false statements to the police. All of this material is part of the record and as such, not newly discovered evidence.

ECF No. 47-16 at 6-7.

////

////

---

[6] Petitioner first brought his actual innocence claim in three state habeas petitions filed in the Sacramento Superior Court. ECF Nos. 47-15, 47-19, 47-21. The superior court rejected his claim in a reasoned decision. ECF Nos. 47-16, 47-20, 47-22. Petitioner renewed this claim in two subsequent petitions to the Third District Court of Appeals, which were denied. ECF Nos. 47-33, 47-34, 47-35, 47-36. Petitioner then presented his claim to the California Supreme Court twice. ECF Nos. 47-39, 47-41. The California Supreme Court summarily denied his claim. ECF Nos. 47-40, 47-42.

### D. Relief Is Barred By 28 U.S.C. § 2254

As noted above, the U.S. Supreme Court has never held that actual innocence provides a free-standing constitutional basis for relief from a non-capital conviction. See Herrera, 506 U.S. at 404; Osborne, 557 U.S. at 71-72. Where there is no "clearly established law" within the meaning of § 2254(d), there can be no unreasonable application of federal law by the state court. See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam). Accordingly, AEDPA bars relief on petitioner's innocence claim.[7]

## II. Claim Two: Judicial Bias

### A. Petitioner's Allegations and Pertinent State Court Record

Petitioner alleges that the trial judge demonstrated bias and "embroilment towards Mr. Owens" by (1) permitting petitioner's jury to hear the testimony of Channa Gates, co-defendant Murray's witness; (2) interfering with the cross-examination of Tamika Reed; and (3) permitting the prosecution to present a videorecording of an interview that relied on phone records which were not themselves in evidence. ECF No. 29 at 4, 10-11.[8]

### B. The Clearly Established Federal Law

Due process requires a fair trial in a fair tribunal. In re Murchison, 349 U.S. 133, 136 (1955). This includes a judge with no actual bias against the defendant or interest in the outcome of the case. Bracy v. Gramley, 520 U.S. 899, 904-05 (1997). Judicial rulings alone almost never establish bias; a significant "extrajudicial source" factor must be present. Liteky v. United States, 510 U.S. 540, 555 (1994). To prevail on a claim of judicial bias, a petitioner must present facts

---

[7] Moreover, the superior court correctly found that petitioner's claim of innocence is not supported by new evidence. To demonstrate innocence in the federal habeas context, in order to defeat a procedural defense, a petitioner must produce "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." Schlup, 513 U.S. at 324. All of the evidentiary and credibility issues argued here were available at trial and were in fact argued at trial. All exhibits to the petition, with the exception of Ms. Porter's handwritten statement, are materials from proceedings in the trial court. The Porter letter addresses information that was well known to the defense and to the jury: that Desirea Cunningham had retracted her statements implicating petitioner, and claimed she had lied because she was angry about his infidelity. The transcript at ECF No. 38 is similarly cumulative.

[8] A fourth alleged instance of bias goes to the special circumstance finding. ECF No. 29 at 11. That issue is moot because the special circumstance finding was vacated. See supra at pp. 4-5.

1  sufficient to "overcome a presumption of honesty and integrity in those serving as adjudicators."
2  Withrow v. Larkin, 421 U.S. 35, 47 (1975).  There is no constitutional violation without a
3  showing of facts that objectively demonstrate a serious risk of actual bias.  See Caperton v. A.T.
4  Massey Coal Co., Inc., 556 U.S. 868, 883-84 (2009).

### C. The State Court's Ruling

The superior court issued the only reasoned decision adjudicating this claim,[9] and that is the decision subject to review here.  See Bonner, 425 F.3d at 1148 n.13.  The superior court denied the claim on the ground that it was barred in habeas because it could have been, but was not, raised on appeal.  ECF No. 47-16 at 6 (citing In re Harris, 5 Cal. 4th 813, 829 (1993); In re Dixon, 41 Cal. 2d 756, 759 (1953); In re Waltreus, 62 Cal. 2d 218, 225 (1965)).

### D. The Claim Should Be Summarily Denied on the Merits

Because this claim was denied in state court on state law procedural grounds, it may be procedurally defaulted in federal court.  See Coleman v. Thompson, 501 U.S. 722, 750 (1991).  A procedurally defaulted claim may, however, be denied on the merits.  See Lambrix v. Singletary, 520 U.S. 518, 525 (1997).  To the extent there was no merits adjudication of the federal claim in state court, § 2254(d) limitations on relief do not apply and the undersigned considers the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160, 1167-1168 (9th Cir. 2002).

Petitioner has not presented a prima facie case of judicial bias.  Adverse rulings by the judge do not support an inference that the judge was biased against petitioner, let alone biased for reasons extrinsic to the proceeding, or that he had an interest in the outcome.  See Liteky, 510 U.S. at 555; Taylor v. Regents of Univ. of Calif., 993 F.2d 710, 712 (9th Cir. 1993), cert. denied, 510 U.S. 1076 (1994) (adverse ruling does not show judicial bias); Hasbrouck v. Texaco, Inc., 842 F.2d 1034, 1046 (9th Cir. 1987), aff'd on other grounds, 496 U.S. 543 (1990) ("[e]ven if

---

[9] Petitioner first brought his judicial bias claim in two state habeas petitions filed in the Sacramento Superior Court.  ECF Nos. 47-15, 47-19.  The superior court rejected his claim in a reasoned decision.  ECF Nos. 47-16, 47-20.  Petitioner renewed this claim in two subsequent petitions to the Third District Court of Appeals, which were denied.  ECF Nos. 47-33, 47-34, 47-35, 47-36.  Petitioner then presented his claim to the California Supreme Court twice.  ECF Nos. 47-39, 47-41.  The California Supreme Court summarily denied his claim.  ECF Nos. 47-40, 47-42.

[trial] court's rulings were erroneous . . . , they could not justify a finding of judicial bias").[10] Petitioner has alleged no facts which would indicate that the judge had prejudged any issue in the case or had any pecuniary or personal interest in the outcome of the case. See Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995). Accordingly, this claim fails under any standard of review.

### III. Claim Three: Ineffective Assistance of Counsel

#### A. Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that his Sixth Amendment rights were violated by ineffective assistance from his lawyer. ECF No. 29 at 5. First, petitioner alleges that counsel unreasonably failed to call two witnesses at trial: (1) David Nelson, a friend of Dejon Murray's who was interviewed by police about his interactions with Murray immediately prior to the robbery[11]; and (2) "Ms. Porter," Desirea Cunningham's friend who allegedly wrote the handwritten statement at Exhibit 8 to the petition.[12] Id. at 12. Second, petitioner alleges that counsel unreasonably failed to object to the judge's improper response to a jury question during deliberations. The jury had asked whether the phone records referenced in a recorded interview of petitioner were themselves in evidence, and sought clarification regarding a stipulation as to the facts in the video. The court responded that no phone records were in evidence, and that the stipulation "was that the video accurately reflected the events that took place in the interview room." Id. at 12-13 (allegations), 17-19 (exhibit). Additionally, petitioner alleges that counsel unreasonably failed to object to Tamika Reed's testimony that petitioner had set up the robbery.

#### B. The Clearly Established Federal Law

To establish a constitutional violation based on ineffective assistance of counsel, a petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. Strickland v.

---

[10] There is no basis for a predicate finding of error here. On direct review, the California Court of Appeal found that Channa Gates' testimony was admissible against petitioner as a prior consistent statement of Tamika Reed following Tamika's impeachment. ECF No. 47-12 at 26-28. The appellate court also found no error in the trial court's response to the jury question. Even assuming error, the appellate court found it harmless. Id. at 24-26.
[11] The report of the interview is petitioner's Exhibit 11, ECF No. 29 at 59-63.
[12] See ECF No. 29 at 40-42. No signature is visible.

Washington, 466 U.S. 668, 692, 694 (1984). In assessing counsel's performance, the court must apply a strong presumption that counsel's representation fell within the wide range of reasonable professional assistance. Id. at 689. Prejudice means that the error actually had an adverse effect on the defense. There must be a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 693-94. The court need not address both prongs of the Strickland test if the petitioner's showing is insufficient as to one prong. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

### C. The State Court's Ruling

The superior court issued the only reasoned decision adjudicating this claim,[13] and that decision is therefore reviewed for reasonableness under § 2254(d). See Bonner, 425 F.3d at 1148 n.13. The superior court ruled in pertinent part as follows:

> To show ineffective assistance of counsel, one must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. (*Harris, supra*, 5 Cal.4th at 832-833; *Strickland v. Washington* (1984) 466 U.S. 668, 687-688.) Regarding the reasonableness of counsel's performance, courts are directed to be highly deferential. A petitioner claiming ineffective assistance must overcome a presumption that, considering all of the circumstances, counsel's actions "might be considered sound trial strategy." (*Strickland, supra*, 466 U.S. at p. 689.) In addition, a petitioner "must also show prejudice flowing from counsel's performance or lack thereof, such that but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Ibid.*)
>
> Petitioner contends that his attorney should have called two witnesses, Josephine Porter and David Nelson, to testify in his defense. Again, he claims Ms. Porter's testimony would have showed Ms. Cunningham's motivation to lie to police. However, Ms. Cunningham stated at trial that she lied to police due to her anger over another woman. As such, Ms. Porter's testimony would have merely cumulative, the failure to call her as a witness was not

---

[13] Petitioner first brought his ineffective assistance of counsel claim in three state habeas petitions filed in the Sacramento Superior Court. ECF Nos. 47-15, 47-19, 47-21. The superior court rejected his claim in a reasoned decision. ECF Nos. 47-16, 47-20, 47-22. Petitioner renewed this claim in two subsequent petitions to the Third District Court of Appeals, which were denied. ECF Nos. 47-33, 47-34, 47-35, 47-36. Petitioner then presented his claim to the California Supreme Court twice. ECF Nos. 47-39, 47-41. The California Supreme Court summarily denied his claim. ECF Nos. 47-40, 47-42.

> prejudicial. Petitioner alleges that Mr. Nelson would have testified that he saw Dejon Murray and other people, not Petitioner, planning the robbery. Petitioner attaches the transcript of Mr. Nelson's police interview in support, but throughout the interview are comments from the interviewing officer that Mr. Nelson was not telling the truth and had phone records that contradicted his story. Given the questionable veracity of Mr. Nelson's testimony, counsel's decision to not call him as a witness cannot be considered unreasonable.
>
> Regarding Petitioner's claims that his counsel was deficient for failing to raise objections to testimony given by various witnesses during trial and to the jury instructions, these claims are based on facts in the record and, thus, were appealable. Accordingly, they cannot be raised through petition for writ of habeas corpus.

ECF No. 47-16 at 7-8.

### D. Objective Unreasonableness Under § 2254(d)

The superior court correctly identified the federal constitutional principles that apply to this claim under Strickland and progeny, and it applied them reasonably. As to counsel's failure to call witnesses, the superior court accurately noted that because Deseria Cunningham's motivation for making false statements was already before the jury, additional testimony about that fact would have been cumulative. There is no reasonable probability of a different result had an additional witness corroborated Cunningham's jealous anger. It was therefore not objectively unreasonable for the superior court to reject this aspect of the claim for lack of plausible prejudice.[14] See Strickland, 466 U.S. at 694, 697. As for Nelson, it was perfectly reasonable of the state court to find that the statements documented in the interview report, ECF No. 29 at 59-63, had little exculpatory value. The fact that Nelson did not personally observe petitioner's involvement in planning the robbery is not inconsistent with such involvement, and the veracity of Nelson's statements was very much in question. Rejecting this aspect of the claim on the performance prong cannot have been objectively unreasonable because the state court was obliged under Strickland to apply a strong presumption that counsel exercised acceptable

////

---

[14] Moreover, petitioner's conviction did not rest on Cunningham's recanted statements. Tamika Reed's testimony was much more significant, and a reasonable jury would likely have found petitioner guilty even without any consideration of Cunningham's statement to police.

14

professional judgment. 466 U.S. at 689. Petitioner has presented no facts that would overcome this presumption.

Bypassing any procedural default of petitioner's other alleged grounds for the ineffective assistance claim, see Lambrix, 520 U.S. at 525, the undersigned recommends summary denial on the merits. It is not outside the wide range of reasonable professional judgments for defense counsel to stipulate that a video recording accurately depicts the interview it recorded.[15] The stipulation did not say, and the judge's response to the jury's question cannot reasonably be interpreted to imply, that the defense accepted or the jury was to accept the truth of all representations made by the police during the recorded interview (or any other statements made on the recording). Accordingly, counsel's performance in relation to the video and the jury's question is entitled to deference. As to Tamika Reed's testimony, petitioner does not identify any basis on which defense counsel could have excluded the witness. She was subject to cross-examination, which is "the principal means by which the believability of a witness and the truth of [her] testimony are tested." Davis v. Alaska, 415 U.S. 308, 316 (1974). Petitioner's allegations support neither a finding of deficient performance nor a conclusion of prejudice. The claim fails under any standard of review.

## CONCLUSION

For the reasons explained above, it is HEREBY ORDERED as follows:

1. The Clerk of Court shall substitute Derrick Carraway, Regional Parole Administrator, as Respondent in this case; and
2. Petitioner's request to file supplemental evidence, ECF No. 38, is GRANTED.

IT IS FURTHER RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days

---

[15] There are no allegations here that the video recording was altered, edited, incomplete or otherwise did not accurately demonstrate what was said. Rather, petitioner contests the truth of the representations made during the interview about what his phone records showed.

15

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 3, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE